122 F.3d 1070
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Fadia Dib ELZAHER, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 Nos. 97-70093, Auv-lkf-vye.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 25, 1997.**
Decided Sept. 4, 1997.
 
 On Petition for Review of an Order of the Board of Immigration Appeals
 Before: SCHROEDER, FERNANDEZ, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Fadia Dib Elzaher, a native and citizen of Lebanon, petitions pro se for review of the Board of Immigration Appeals' ("BIA") dismissal of her appeal of an immigration judge's ("IJ") denial of her application for asylum and withholding of deportation under 8 U.S.C. §§ 1158(a), 1253(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we grant the petition.
 
 
 3
 Elzaher contends that the BIA's finding that she has not established a well-founded fear of persecution on account of political opinion is unsupported by substantial evidence. We agree.
 
 
 4
 We review the BIA's fact-based determinations, including whether an alien has adequately demonstrated past or potential future persecution, under the substantial evidence standard. See Limsico v. INS, 951 F.2d 210, 212 (9th Cir.1991). To succeed on appeal, a petitioner must show "that the evidence not only supports [reversal], but compels it." INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992).
 
 
 5
 An applicant may be entitled to asylum if she establishes that she has suffered past persecution, or has a well-founded fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1101(a)(42)(A); Prasad v. INS, 47 F.3d 336, 338 (9th Cir.1995). An applicant can establish persecution on account of political opinion by presenting evidence that her persecutors were motivated by political views they imputed to her. See Sangha v. INS, 103 F.3d 1482, 1488 (9th Cir.1997). The applicant must show that the persecutor actually attributed opposing political views to her, whether or not the persecutor was correct in doing so. See id. at 1489.
 
 
 6
 Political views may be attributed to an applicant based on her actions or surrounding circumstances. See Desir v. Ilchert, 840 F.2d 723, 727-28 (9th Cir.1988) (stating that "[applicant's] refusal to accede to extortion in a political system founded on extortion resulted in his classification and treatment as a subversive"); Aguilera-Cota v. INS, 914 F.2d 1375, 1380 (9th Cir.1990) (concluding that "[applicant's] status as a government employee caused the opponents of the government to classify him as a person 'guilty' of a political opinion"). The applicant need not show that imputed political opinion was the sole motivation for the persecutor's actions, only that it was one motivation. See Singh v. Ilchert, 63 F.3d 1501, 1509 (9th Cir.1995).
 
 
 7
 Although the IJ expressed concern about Elzaher's credibility, neither the IJ nor the BIA made an express credibility finding. Under such circumstances, we will presume that the BIA found Elzaher credible. See Maldonado-Cruz v. INS, 883 F.2d 788, 792 (9th Cir.1989).
 
 
 8
 Here, Elzaher testified that Hezbollah, an anti-Israeli political group, killed her uncle because they believed he was an Israeli agent. Determined to discover who was personally responsible for the murder, she befriended a Hezbollah member, and eventually secured a secretarial position within the group. While in Hezbollah's employ, Elzaher surreptitiously photocopied twenty files and reported the group's ongoing activities to another uncle.
 
 
 9
 Elzaher testified that one day she overheard Hezbollah members secretly plotting to kill a suspected Israeli agent, and she immediately informed her uncle by telephone. She later surmised that someone in the office must have overheard her conversation. Elzaher testified that she was followed when she left work that day. Upon her uncle's advice, she did not return home, and later fled to Beirut and then New York.
 
 
 10
 Five members of Hezbollah nevertheless went to her family's house, ransacked it, confiscated the photocopies Elzaher had made of their files, and slapped Elzaher's mother. Hezbollah then issued a written warrant condemning Elzaher to death because she had worked "as an agent to several opposing political groups."[1] A month later, Hezbollah members returned to the home of Elzaher's family, kidnapped her brother, beat him severely, and interrogated him extensively about her whereabouts.[2]
 
 
 11
 The BIA dismissed Elzaher's appeal, concluding that Hezbollah was "interested in [her] due to her attempts to secretly obtain information in order to find out who within that organization had killed her uncle, rather than based on an imputed political opinion." In light of the death warrant, that conclusion lacks substantial evidence to support it. The death warrant is compelling evidence to the contrary, and we therefore hold that Elzaher is statutorily eligible for asylum. See Elias-Zacarias, 502 U.S. at 481 n. 1.
 
 
 12
 An applicant is entitled to withholding of deportation if she shows that "her life or freedom would be threatened" on account of political opinion. See 8 U.S.C. § 1253(h)(1); Cardoza-Fonseca v. INS, 767 F.2d 1448, 1452 (9th Cir.1985), aff'd, 480 U.S. 421 (1987). The applicant must demonstrate a "clear probability" of persecution by presenting evidence that it is "more likely than not" that she will be persecuted. See Cardoza-Fonseca, 767 F.2d at 1452. The evidence before us compels the conclusion that Elzaher is also eligible for withholding of deportation.
 
 
 13
 Accordingly, we grant Elzaher's request for withholding of deportation, and we remand to the BIA to exercise its discretion regarding asylum in light of the death warrant.
 
 
 14
 PETITION FOR REVIEW GRANTED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The IJ refused to admit into evidence a letter from the Lebanese Ministry of the Interior and the certificate of death for Elzaher's uncle because the documents were not properly authenticated. See 8 C.F.R. § 287.6. We lack jurisdiction to consider the admissibility of these documents because Elzaher failed to raise the issue before the BIA. See Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir.1994). Contrary to Elzaher's belief, the death warrant was admitted into evidence, but neither the IJ nor the BIA referred to its contents
 
 
 [2]
 A former neighbor testified to Hezbollah's two visits to Elzaher's family